IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BILLY J. MITCHELL, #207548, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-1008-WHA |
| | ) | |
| LEEPOSEY DANIELS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Billy

J. Mitchell ("Mitchell"), an indigent state inmate incarcerated at the Elmore Correctional

Facility ("Elmore").  Mitchell identifies himself as a practitioner of the Native American

religion.  In the instant complaint, Mitchell alleges that:  (1) The defendants have deprived

him of his First Amendment right to practice his religion because they are not providing

adequate security for the Native American worship area as inmates who are not Native

American practitioners are able to access the ceremonial grounds and commit acts which

desecrate the grounds; and (2) The defendants have discriminated against him in violation

of his right to equal protection because they ensure the security of the chapel, which is used

by several other religious groups for services, from unauthorized activities but fail to provide

the same level of security for the Native American worship area.  *Compl. - Doc. No. 1* at 3.

Mitchell names Warden Leeposey Daniels, Assistant Warden Leon Bolling, Capt. Charles

McKee and Chaplain Thomas Woodfin as defendants in this cause of action.  Mitchell seeks declaratory and injunctive relief for the alleged violations of his constitutional rights.

The defendants filed an answer, special report and supporting evidentiary materials addressing Mitchell's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat the special report as a motion for summary judgment.  *Order of February 13, 2013 - Doc. No. 16*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-94 (internal quotation marks

omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Peebles v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Mitchell is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the

4

opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact,

granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Mitchell has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment.

### III.  DISCUSSION[2]

### A.  The First Amendment Claim

Federal law recognizes

> that "courts are ill equipped to deal with the increasingly urgent problems of
> prison administration and reform." [*Procunier v. Martinez*, 416 U.S. 396, 405
> (1974)].  As the *Martinez* Court acknowledged, "the problems of prisons in
> America are complex and intractable, and, more to the point, they are not
> readily susceptible of resolution by decree." *Id.*, at 404-405, 94 S. Ct. at 1807.
> Running a prison is an inordinately difficult undertaking that requires
> expertise, planning, and the commitment of resources.

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  Correctional officials are, therefore, "accorded

latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321 (1972),

which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate]

privileges and rights."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quotation marks and

citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

"In the First Amendment context, . . . some rights are simply inconsistent with the

status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"

*Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (quoting *Pell*, 417 U.S. at 822).  In accordance

with this principle, an inmate's rights established under the First Amendment are not

protected if allowing such protection is "inconsistent with his status as a prisoner or with the

---

[2]The court limits its review to the claims set forth in the complaint.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y, Fla. Dep't of Corr.*, 502 F. App'x 905, 909-10 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

legitimate penological objectives of the corrections system." *Id*. at 822.  Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their sincerely held religious beliefs, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987); *Turner*, 482 U.S. 78; *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996)*.*  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823; *Bell*, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is, therefore, clear that preservation of security and order within a prison is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, *Lawson*, 85 F.3d at 512; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief.  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Overton v. Bazzetta*, 539

U.S. 126, 132 (2003).  The burden must be substantial and significantly interfere with an inmate's practice or free exercise of his religious beliefs.  *Hernandez*, 490 U.S. at  699.  A policy is "valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone*, 482 U.S. at 349.  "[S]uch a standard is necessary if 'prison administrators . . . , and not the courts [are] to make the difficult judgments concerning institutional operations.'"  *Turner*, 482 U.S. at 89 (quoting *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 128 (1977)).  Consequently, the defendants do not have the burden of proving the validity of an administrative action or security decision; rather, the burden is on the plaintiff to disprove it.  *Id*. at 89-91.

Mitchell complains that inmates who are not practitioners of Native American Spirituality are gaining access to the Native American ceremonial grounds and committing acts which desecrate the grounds.  To prevent disturbance or desecration of the Native American ceremonial grounds, the grounds are surrounded on two sides by a fence approximately three feet high, the third side is in close proximity to the facility's perimeter fence with foot traffic on this side limited to correctional officers while the fourth side is used for entry onto the grounds and shares a boundary with the worship area of the Wiccans and Odinists.[3]  Mitchell acknowledges that the problem inmates enter the area in violation

---

[3]In his response, Mitchell argues that to prevent problematic inmates from entering the ceremonial grounds the defendants should erect a six-foot fence equipped with a locking gate enclosing the grounds.  However, it is clear to the court that use of the proposed fence would not serve to eliminate unauthorized use of the ceremonial grounds  because the grounds would remain accessible to inmates under the current restrictions governing use of the grounds and for the same amount of time as presently permitted. *Defendants' Exhibit B (Administrative Regulation No. 333) - Doc. No. 15-2* at 12 ("Native American inmates shall be allowed access to the ceremonial grounds when the prison yard is open. Additionally, when the prison yard is **not** open, Native American inmates shall have access to the ceremonial grounds

of the rules adopted by correctional officials designating the grounds as Native American ceremonial grounds for use only by those prisoners who have declared themselves practitioners of Native American Spirituality and whose names appear on the roster of Native American practitioners.[4]   Inmates are free to practice any religion.   Thus, correctional officials cannot exclude inmates who identify themselves as sincere practitioners of the Native American faith from the Native American grounds merely because they are not of the Native American race.   *E.g.*, *Morrison v. Garraghty*, 239 F.3d 648, 658-59 (4th Cir. 2001) (prison officials cannot deny non-Native Americans the ability to possess Native American religious items based on their race).   It is likewise undisputed that inmates who are not authorized to use the ceremonial grounds are removed from the grounds by correctional officials when officials are aware of the violation at the time it occurs.   Moreover, the acts of desecration referenced by Mitchell, i.e., masturbation, homosexual encounters and drug

---

if the chapel is open or during 'chapel call' but not after sunset. Factors that may be considered regarding additional access to the ceremonial grounds include the number of Native American inmates who will use the ceremonial grounds, and the physical structure of the institution.").

[4] As acknowledged in *Coleman v. Allen*, 2:09-CV-311-TMH-SRW, 2012 WL 4378086 at *10 (Recommendation of the Magistrate Judge), 2012 WL 4350945 (order adopting Recommendation as judgment of the court), utilization of this roster aids in maintaining security of the ceremonial grounds assigned to Native Americans and ensures that these inmates have the opportunity to practice their chosen religion.   "[S]everal security and safety issues are at play, which dictate that correctional personnel be aware of those inmates who have permission to be on Native American ceremonial grounds including, but not limited to: (1) the large inmate population at each major prison facility in Alabama; (2) the fact that there [are limited] State Chaplain[s]; (3) the fact that over fifteen different religions are accommodated within ADOC prisons; (4) the fact that there may be many sects contained within one particular religion; (5) the variety of religious sects, each of which may require time, space, and place commitments requiring oversight by prison personnel; (6) the location of some Native American ceremonial grounds in areas of limited traffic since, if inmates have identified themselves as followers of the Native American Tribal Belief System, they are permitted in these areas; (7) the Chaplain's being responsible for facilitating the religious programs at the prison facility; (8) the necessity to ensure the peaceful practice of an inmate's chosen religion; (9) prevention of infiltration by other groups such as gangs who attempt to use religious groups as a stage to act upon other criminal or terrorist activity; and (10) the necessity of ensuring that inmates be sent to the appropriate religious program."   *Id.*

use, are all violations of the rules governing inmate behavior and subject inmates to disciplinary action when observed by correctional officials. Finally, although an officer is not present at all times to monitor the Native American ceremonial grounds, the grounds are under the supervision of the correctional staff at Elmore and are protected by security measures similar to those employed in other common areas of the facility.

The record before the court establishes that the defendants have undertaken security measures to protect the Native American ceremonial grounds from desecration by recalcitrant inmates. The amount of security provided is dictated by the fact that the ceremonial grounds are located on the grounds of a major correctional facility and must remain accessible to all inmates who identify themselves as practitioners of Native American Spirituality. Mitchell has failed to show that the policies or procedures governing use of the Native American ceremonial grounds have significantly interfered with his ability to practice his religion nor has he demonstrated that any action undertaken by the defendants substantially burdened his ability to engage in the free exercise of his religion. Mitchell has therefore failed to establish a violation of his First Amendment rights. Consequently, summary judgment is due to be granted in favor of the defendants on this claim.[5]

---

[5]The court notes that Mitchell's religious exercise claim would fail even if pursued under the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"] as he does not demonstrate a substantial burden on the practice of his religion with respect to the claim presented herein. *Smith v. Allen*, 502 F.3d 1255, 1276-77 (11th Cir. 2007 (citations omitted) ("To establish a prima facie case under [the applicable] section . . . of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened. . . . A 'substantial burden' [is defined] as being 'significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.' . . . [T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.'").

### B.  The Equal Protection Claim

Mitchell asserts that he has been subjected to "religious discrimination" by the defendants. *Compl. - Doc. No. 1* at 3.  In support of this claim, Mitchell alleges that "[t]he staff at Elmore Correctional Facility ensures that the chapel [which is used for various non-Native American religious services and other activities] is secure and used only for the designated purpose . . ., but they do not put forth the effort to do the same for the Native American worship area." *Id*.  This claim, however, provides no basis for relief to Mitchell.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-12 (1974); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).

13

"[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292 (1987).  Where a plaintiff challenges an action of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Ga. Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Since this case is before the court on a properly supported motion for summary judgment submitted by the defendants, Mitchell bears the burden of producing evidence which would be admissible at trial sufficient to show that the defendants provided more favorable treatment to other similarly situated inmates and acted with intentional discrimination in doing so. *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing

14

defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *Arlington Heights*, 429 U.S. at 265 (At the summary judgment stage, the plaintiff must produce specific, substantial evidence that the defendants intentionally discriminated against him due to a constitutionally protected interest.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Assuming for the sake of argument that Mitchell meets the similarly situated element, his equal protection claim nevertheless fails because no reasonable juror could find, based on this record, that the defendants acted with an improper motive. *McKleskey*, 481 U.S. at 292. The defendants adamantly deny they undertook any adverse action against Mitchell in violation of his equal protection rights. *Defendants' Exhibit C (Aff. of Leeposey Daniels) - Doc. No. 15-3* at 2 ("[T]he area designated for Native American Spritualists to practice their religion" is protected on two sides by a 3-foot fence whereas "the third side is close to a

perimeter fence, and foot traffic [on this side of the grounds] is restricted to officers. . . .
There are signs affixed to the fencing around this area clearly designating it as a Native
American ceremonial ground. . . .  Any inmate found on the grounds who is not on the roster
[of Native American Spiritualists is] removed from the area. . . .  While all areas of the
institution are under the supervision of our security staff, rule violations still occur.  There
are no specific officers designated to monitor religious activities unless a non-staff volunteer
is in attendance [at which time a staff member is assigned to provide security for the
volunteer]."); *Plaintiff's Response - Doc. No. 21-5* at 2-3 (hand drawn images of ceremonial
grounds and signs restricting entry).  Mitchell does not dispute the security measures
provided by the defendants but seeks additional security for the ceremonial grounds.

Other than Mitchell's self-serving, conclusory allegation of discrimination, the record
is devoid of evidence that the defendants acted in an intentionally discriminatory manner.
Instead, the evidence before the court indicates that the defendants did not take any adverse
action against Mitchell based on his religion and further shows that they provided security
to the Native American ceremonial grounds and the chapel in a commensurate manner.[6]
Mitchell has therefore not created a genuine issue that religion or some other constitutionally
impermissible factor constituted a motivating factor in the defendants' actions regarding
security of the Native American ceremonial grounds.  Thus, the defendants are entitled to

---

[6]Even had Mitchell shown some differential treatment with respect to security of the ceremonial grounds, the
showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *Sweet*, 467 F.3d
at 1319; *E & T Realty v. Strickland*, 830 F.2d 1107, 1114-15 (11th Cir. 1987); *Horner v. Ky. High Sch. Athletic Ass'n*,
43 F.3d 265, 276 (6th Cir. 1994).  In addition, arbitrary action by prison officials does not constitute a violation of the
Constitution.  *E & T Realty*, 830 F.2d at 1114.

summary judgment on Mitchell's equal protection claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 28, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

    Done this 14th day of July, 2015.

                            /s/ Wallace Capel, Jr.
                            WALLACE CAPEL, JR.
                            UNITED STATES MAGISTRATE JUDGE